# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLARIAN CAPITAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SOC, LLC, <br><br> Defendant. | Case No.: 1:11cv00031 LJO DLB <br><br> ORDER RE: MOTION FOR RULE 37 SANCTIONS <br> (Doc. 60) <br><br> ORDER RE: THIRD MOTION FOR RULE 37 SANCTIONS <br> (Doc. 79) |

On October 5, 2012, Defendant SOC, LLC ("Defendant" or "SOC") filed a motion for sanctions based on the alleged failure of Plaintiff Dolarian Capital, Inc. ("Plaintiff" or "DCI") to abide by its discovery obligations and the Court's September 12, 2012 order. Doc. 60. On November 19, 2012, Defendant filed a third motion for sanctions based on Plaintiff's alleged pattern of discovery misconduct. Doc. 79. The motions were heard on December 5, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge. Brad Bloodworth and Joseph Davis appeared on behalf of Defendant. Myron Smith appeared on behalf of Plaintiff.

**INTRODUCTION**

In January 2011, Plaintiff filed this breach of contract action regarding the sale of guns and ammunition for use in Iraq and/or Afghanistan. According to the complaint, Plaintiff apparently agreed to procure and sell guns and ammunition to Defendant and to ship the

weapons and ammunition to Afghanistan.  The weapons and ammunition to fulfill the contract were located in Bulgaria and other Eastern European locations.  Plaintiff reportedly requested documentation from Defendant to secure licensing and clearance for the purchase and shipment of the weapons.  Subsequently, Defendant informed Plaintiff that it was cancelling the purchase orders for the weapons.  However, Plaintiff had acquired weapons to fulfill the terms of the contract.

Defendant answered the complaint and counterclaimed for breach of contract.  By its counterclaim, Defendant asserts that Plaintiff falsely represented that it was lawfully registered with the Department of State as a broker of articles of war, falsely represented that it brokered large sales of automatic weapons from Eastern Europe all the time, falsely represented that it was capable of delivering large weapons orders in less than two months and falsely represented that it would deliver new weapons and ammunition.  After Defendant provided a 50% pre-payment, Plaintiff failed to deliver any weapons or ammunition.  Defendant later learned that Plaintiff was not a licensed weapons broker, had no possibility of obtaining governmental approvals to import/export large quantities of automatic weapons and had no intention of delivering certain new weapons.

## **DISCUSSION**

### I.      **Motion for Sanctions (Doc. 60)**

    A.      Background

On August 1, 2012, Defendant filed a motion to compel Plaintiff to provide responses to requests for production and interrogatories.  According to Defendant, Plaintiff failed to produce any documents, refused to admit or deny any of the requests for admission and refused to answer any interrogatories.

On September 12, 2012, the Court granted the motion to compel and ordered Plaintiff to provide supplemental responses to Defendant's interrogatories and to produce all non-privileged

material responsive to the requests for production no later than September 21, 2012.  The Court also expressly ordered Plaintiff to provide a response to each request for production that specifically stated (1) Plaintiff is producing all responsive documents; (2) Plaintiff has no responsive documents in its possession, custody or control; or (3) Plaintiff's discovery responses are protected by privilege.[1]

At some point, Plaintiff supplemented its document production.  Believing that Plaintiff's supplemental production duplicated previous productions and failed to comply with the Court's order, Defendant filed the instant motion for sanctions.

In its moving papers, Defendant asks the Court to grant the motion and (1) preclude Plaintiff from introducing any evidence, information, or witnesses at trial that Plaintiff has not already disclosed in its previous productions or Rule 26 disclosures, (2) impose monetary sanctions by ordering Plaintiff to reimburse Defendant for the fees and expenses incurred in bringing the motion, and (3) order any further relief deemed just and appropriate.  Defendant also asks the Court to admonish Plaintiff that continued non-compliance with its discovery obligations and the Court's orders could result in issue sanctions or terminating sanctions.

On November 1, 2012, Plaintiff filed an opposition to the sanctions motion, stating that it had complied with the discovery requests, had produced the requested documents more than once and had produced documents in its possession, custody or control that are responsive to the requests.  Plaintiff reports that it provided approximately 1,000 pages of documents to Defendant on September 11, 2012.  Following the Court's order, Defendant provided a supplemental response, which included the previously produced documents with a Bate stamp and a chart indicating which documents were responsive to each discovery request.  Plaintiff provided another copy of the 1,000 pages at depositions during the week of October 17, 2012.

---

[1] Additionally, the Court found that a reasonable award of attorneys' fees and costs might be appropriate and directed Defendant to file a declaration of such costs within ten (10) days of the order.  Defendant filed the requested declaration and reported that defense counsel expended $69,805.00 in bringing the motion.  Doc. 59.  The requested fees are pending.

Defendant filed a reply on November 6, 2012, asking the Court to issue terminating sanctions. In the reply, Defendant asserts that Plaintiff essentially made no effort to comply with the Court's order. Defendant states that Plaintiff's President and CEO, Ara Dolarian, admitted in his deposition that he had not searched for any records after the Court's September 12 order and that Plaintiff's bookkeeper Stephen Mar admitted that he had not been asked to search for any documents. Exhibits A and B to Declaration of Brad Bloodworth ("Bloodworth Dec.").

Defendant further asserts that Plaintiff clearly has not produced critical documents responsive to Defendant's discovery requests. Defendant explains that deposition testimony and an investigation revealed that the Department of Homeland Security ("DHS") seized approximately 22,000 pages of documents from Plaintiff's Fresno office on April 23, 2012. An Assistant United States Attorney for District of Arizona returned copies of those documents to Plaintiff's counsel, Jan Hanzlik of Venable LLP on June 22, 2012. Ex. D. to Bloodworth Dec. Defendant did not discover the seizure of documents until the deposition of Mr. Mar, who testified that agents seized files related to the underlying transaction, including purchase orders, invoices evidencing payments to third parties to acquire weapons, bank statements and the fulfillment file for the transaction at issue. Exhibit A to Bloodworth Dec. Mr. Dolarian confirmed that documents relevant to the transaction were among those seized, including the fulfillment file. According to Defendant, Plaintiff has not produced any of the identified, relevant documents.

In addition to the above, Defendant also alleges that Mr. Dolarian testified falsely in an effort to hide Plaintiff's violation of the Court's September 12, 2012 order. According to Defendant, Mr. Dolarian testified on October 19, 2012, that Plaintiff was unable to produce certain responsive documents because they were among "22,000 pieces of paper" confiscated by DHS during the raid in February 2012. Mr. Dolarian claimed that DHS had not returned hard copy documents to Plaintiff, but Venable was in the process of getting them from DHS. Exhibit

B to Bloodworth Dec.  However, Mr. Dolarian later conceded that DHS had returned electronic copies of the seized documents to Venable and Venable reportedly had refused to provide the CD copy of documents despite his requests. Exhibit C to Bloodworth Dec.  Defendant apparently confronted Mr. Dolarian during his individual deposition with a statement from DHS Agent David Royer indicating that electronic copies of the seized documents were returned to Plaintiff on June 22, 2012.  Bloodworth Dec.¶ ¶ 6-7.

As a final argument, Defendant asserts that Plaintiff's opposition confirms violation of the Court's September 12 order.  According to Defendant, Plaintiff's opposition: (1) conceded that the "supplemental" production in response to the Court's order was nothing more than a repackaging of the same documents that had already been produced;  (2) inaccurately claimed that Defendant had received all documents within Plaintiff's control despite existence of the CD with electronic copies received by Venable, which were not produced; (3) included a misleading declaration from Plaintiff's counsel, which identified a limited production of documents "in the possession" (versus custody and control) of Plaintiff; and (4) Plaintiff had access to the requested documents prior to the raid in April 2012 and should have produced them in response to the February 2012 request for production.

  B. Analysis

Federal Rule of Civil Procedure 37 authorizes the imposition of sanctions for a party's failure to obey a court order to provide or permit discovery.  Fed. R. Civ. P. 37(b)(2)(A).  These sanctions may include prohibiting the disobedient party from introducing designated matters in evidence, striking pleadings, dismissing the action in whole or in part or rendering a default judgment.  Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

In this instance, the Court finds that sanctions are appropriate.   At a minimum, the evidence and statements of counsel indicate that Plaintiff did not produce any new or additional

5

documents following the Court's September 12 order and that Plaintiff did not make a diligent search for or production of responsive documents.

Defendant believes that this discovery misconduct warrants terminating sanctions. The Court disagrees. Before taking the drastic measure of dismissing a case or declaring a default, a district court must consider the following factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011) (internal citation and quotation omitted). "To warrant a sanction of dismissal, the party's violations of the court's order must be due to willfulness or bad faith." Id.

Here, the first two factors support sanctions, while the fourth cuts against terminating sanctions. In that instance, the third and fifth factors – risk of prejudice and the availability of less drastic sanctions -- are decisive. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990).

As to the third factor, Defendant argues prejudice because Plaintiff has not produced critical documents. A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case. Id. at 1412. However, as discussed at the hearing, the Court does not find that Defendant will be prejudiced by the failure of Plaintiff to produce relevant documents (or even to request discovery). To establish its case-in-chief, Plaintiff will be limited to those documents already produced. Therefore, the failure to produce relevant documents impairs Plaintiff's own ability to meet its burden of proof. Accordingly, the third factor, risk of prejudice, does not support terminating sanctions.

Further, the Court finds that less drastic sanctions, which prohibit Plaintiff from introducing designated matters in evidence, are available. Fed. R. Civ. P. 37(b)(2)(A)(ii). Such intermediate sanctions should be utilized as there is not an exhaustive history of prior discovery abuses in this case. Accordingly, the Court finds it appropriate to preclude Plaintiff from introducing any evidence, testimony, or witnesses either at trial or at the summary judgment stage that Plaintiff has not disclosed to Defendant in its document productions or in its Rule 26 disclosures. This preclusion includes testimony regarding those events referenced or otherwise identified in the undisclosed documents.

        C.        Payment of Expenses

When a party fails to obey a court order to provide discovery, Rule 37 mandates that the court order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure. Fed. R. Civ. P. 37(b)(C). However, the court should not order the payment of expenses if the failure was substantially justified or other circumstances make an award of expenses unjust. Id.

Here, Plaintiff failed to obey the Court's September 12 order to provide discovery and there is no evidence that such a failure was substantially justified or that other circumstances make an award of expenses unjust. Accordingly, the Court orders Plaintiff to pay Defendant's reasonable expenses, including attorney's fees, incurred in bringing the instant motion. Defendant shall file a declaration supporting these expenses and fees within 14 days of service of this order. Plaintiff may file any objections to the requested fees within 7 days thereafter. No reply is permitted unless otherwise ordered.

**II.**        **Defendant's Third Motion for Rule 37 Sanctions  (Doc. 79)**

        A.        Background

On November 19, 2012, Defendant filed a third motion for sanctions again based on Plaintiff's purported discovery misconduct. Defendant asserts that Plaintiff's motive for

7

disregarding the Federal Rules of Civil Procedure and the Court's September 2012 order became apparent at the deposition of Mr. Dolarian on October 24, 2012.  Minutes before the deposition, Plaintiff's counsel informed Defendant that DCI and Mr. Dolarian expected to receive a "pre-plea letter" from the United States Attorney for the District of Arizona.  Plaintiff's counsel then explained that once the letter was received, Plaintiff would move to stay this action because of the pending federal criminal proceeding.  Defendant believes that Plaintiff is trying to "run out the clock" and the only proper sanction is termination of this action.  Defendant also believes that DCI remains a Plaintiff in name only because it has not produced any discovery to support its liability or damages allegations and has not sought any discovery from Defendant.

With regard to the specific discovery abuses at issue here, Defendant first claims that Plaintiff failed to direct its employees to preserve relevant documents.  As discussed above, Mr. Mar testified that he was never directed not to destroy documents and that he was sure that he deleted e-mails relevant to the disputed transaction.   Mr. Dolarian also testified that there was no document retention policy and employees were not instructed to retain documents potentially relevant to the litigation.  Exs. C and D to Declaration of Joseph Davis ("Davis Dec.").

Second, Defendant claims that Plaintiff failed to present complete and accurate Initial Disclosures, omitting the names of witnesses likely to have discoverable information.  These witnesses include the following:  (1) purported suppliers referenced in the Complaint; (2) David Borchardt, a former director of DCI, and Manuel Duenes, a current employee of DCI; (3) five individuals purportedly associated with third party vendors that allegedly were to provide weapons and ammunition to DCI in support of the disputed transaction.  See Ex. E to Davis Dec.

Third, as discussed above, Defendant claims that Plaintiff failed to search for and collect documents potentially responsive to Defendant's document requests.  Per Defendant, Plaintiff failed to collect responsive documents from Mr. Mar and failed to produce electronic documents from the server in their "native" form.

In opposition, Plaintiff contends that it has complied with the Court's order and the discovery requests. Plaintiff explains that this was a business transaction that took place over a short period of time and "there are only so many emails, letter[s], contracts, and purchase orders that can be and that were generated during this time frame." Plaintiff further states that "[t]he documents have been produced" and that "[t]he employees who have knowledge or actually worked on this transaction have been deposed." Opposition, p. 8.

Plaintiff acknowledges the order compelling discovery responses, but contends that following the order its officers have been deposed and documents have been produced. Plaintiff asserts that it has not intentionally destroyed any evidence, it is not intentionally or willfully evading production of documents and it has provided over 1,000 pages of documents.

To support its explanation and statements, Plaintiff submitted the declaration of Mr. Dolarian. Mr. Dolarian declares that he hired counsel in late 2010 to handle this matter. He was instructed to, and did, preserve all of his communications and provided them to his counsel, Mr. Sunshine. An informal mediation was held, but the matter was not resolved and Mr. Sunshine withdrew from the case. Mr. Dolarian is informed that Mr. Sunshine did not provide copies of correspondence to defense counsel, Ms. Lee, but does not know why. Declaration of Ara Dolarian ("Dolarian Dec.") ¶¶ 12-13, 27.

Mr. Dolarian further declares that Judge Austin signed a search warrant for DCI's office and Mr. Dolarian's residence on April 23, 2012. The warrant was executed within a few days and the agents of Homeland Security removed all of the papers, files, computers, and weapons (used for demonstration purposes) from Mr. Dolarian's residence and the office. Computers and servers were returned to Mr. Dolarian between July 5 and July 15, 2012, but the papers and files have not been returned. Dolarian Dec. ¶¶ 14-19.

After the search, Mr. Dolarian retained counsel to advise him and also retained counsel for the instant matter, Mr. Smith, in May 2012  In October 2012, Mr. Dolarian was informed

that the U.S. Attorney's Office in Arizona intended to offer a pre-plea to resolve the unrelated case. Mr. Dolarian informed Mr. Smith and they discussed obtaining a stay of this case. Mr. Dolarian is informed that Mr. Smith discussed this information with defense counsel. Dolarian Dec. ¶¶ 20-21, 24. Mr. Dolarian understood "that the conversation was that DCI would not proceed until [he] received the pre-plea offer from the US Attorney." Dolarian Dec. ¶ 21. As of November 28, 2012, no pre-plea offer had been received and no stay had been requested. Dolarian Dec. ¶ 22.

Mr. Dolarian further declares that he has maintained the computer files to the best of his ability and all documents that are in his "possession" have been produced. He further notes that the only other DCI employees with access to the documents are Mr. Mar and Mr. Manuel Dunes, who was not involved with the transaction at issue. Dolarian Dec. ¶¶ 28-29.

Defendant replies that Plaintiff has not complied with the Court's order and discovery requests. Among other things, Plaintiff has not produced any of the 22,000 documents that were seized by DHS and returned to Plaintiff's control in June 2012 and Plaintiff has not produced any responsive emails stored on Mr. Mar's computer.

Defendant further notes that the opposition fails to dispute the contentions that Plaintiff has failed to preserve relevant documents, has failed to provide accurate initial disclosures of those individuals with discoverable information and has failed to search for responsive documents, not just those Mr. Dolarian reportedly gave to Mr. Sunshine.

Further, Defendant contends that Plaintiff inaccurately claims that it has complied with the Court's order. Mr. Dolarian suggests that DCI cannot produce documents because DHS has not returned them, but Defendant reports that the US Attorney's office confirmed that it returned the seized documents to Plaintiff's counsel on June 22, 2012. Mr. Dolarian also suggests that Mr. Sunshine is withholding documents, however Mr. Sunshine informed defense counsel that he returned all documents to Plaintiff at the time of termination. Ex. E to Doc. 75.

B.   Analysis

Defendant believes that the discovery misconduct outlined in this third motion also warrants terminating sanctions.  Again, the Court disagrees.  In deciding the appropriateness of terminating sanctions, the Court has considered the following factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Dreith, 648 F.3d 779, 788 (9th Cir. 2011) (internal citation and quotation omitted).

As before, the first two factors support sanctions, while the fourth cuts against terminating sanctions.  Therefore, the third and fifth factors – risk of prejudice and the availability of less drastic sanctions -- are decisive.  Adriana, 913 F.2d at 1412.

Given the intermediate sanctions imposed for Plaintiff's failure to obey the Court's September 12 order, the Court does not find that Defendant will be prejudiced by the alleged discovery abuses.  Further, the Court finds that the intermediate sanctions, which prohibit Plaintiff from introducing designated matters in evidence, are sufficient to address the discovery abuses at this stage of the proceedings.  Therefore, Defendant's third motion for sanctions is DENIED.

## **CONCLUSION AND ORDER**

For the reasons discussed, the Court HEREBY ORDERS as follows:

1. Defendant's Motion for Rule 37 Sanctions (Doc. 60) is GRANTED IN PART AND DENIED IN PART;
2. Plaintiff is PRECLUDED from introducing any evidence, testimony, or witnesses either at trial or at the summary judgment stage that Plaintiff has not disclosed to Defendant in its document productions or in its Rule 26 disclosures.  This preclusion

includes testimony regarding those events referenced or otherwise identified in the undisclosed documents;

3. Plaintiff SHALL pay Defendant's reasonable expenses, including attorney's fees, incurred in bringing the Motion for Rule 37 Sanctions (Doc. 60).

4. Defendant SHALL file a declaration supporting the preparation of the Motion for Rule 37 sanctions (Doc. 60) and related reply within 14 days of service of this order. Plaintiff may file any objections to the requested fees within 7 days thereafter. No reply is permitted unless otherwise ordered.

5. Defendant's Third Motion for Rule 37 Sanctions (Doc. 79) is DENIED.

IT IS SO ORDERED.

Dated: **December 6, 2012**   /s/ *Dennis L. Beck*
UNITED STATES MAGISTRATE JUDGE