**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOLARIAN CAPITAL, INC., | 1:11-CV-00031-LJO-SAB |
| Plaintiff, | **ORDER ON MOTION TO DISMISS** (Doc. 104) |
| v. | |
| SOC, LLC, | |
| Defendant. | |
| SOC, LLC, | |
| Counterclaim-Plaintiff, | |
| v. | |
| DOLARIAN CAPITAL, INC., and ARA DOLARIAN, | |
| Counterclaim-Defendants. | |

**INTRODUCTION**

Plaintiff Dolarian Capital, Inc. ("DCI") brought suit against Defendant SOC, LLC ("SOC") for breach of contract and related claims.  SOC filed counterclaims against DCI and amended them to also include Ara Dolarian ("Dolarian") as a Counterclaim-Defendant under the alter ego doctrine.  Dolarian contends that SOC's amended counterclaims fail to establish an alter ego theory.  Now pending before the Court is Dolarian's motion to dismiss SOC's amended counterclaims against him.  SOC has filed an opposition, and Dolarian has filed a reply.  Upon careful consideration of the parties' submissions

1

and the entire record in this case, the Court DENIES Dolarian's motion to dismiss SOC's counterclaims against him.

**BACKGROUND**

On January 5, 2011, DCI filed this breach of contract action regarding the sale of weapons and ammunition for use in Iraq and/or Afghanistan.  DCI was to procure and sell weapons and ammunition to SOC and to ship the weapons and ammunition to Afghanistan.  According to the complaint, SOC canceled the purchase orders when DCI had already acquired the weapons to fulfill the terms of the contract.  DCI alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation, and account stated.

SOC filed an answer and counterclaims on March 4, 2011.  The counterclaims allege that DCI falsely represented that it was lawfully registered with the United States Department of State as a Broker of Articles of War.  SOC also contends that DCI falsely represented that it frequently brokered large sales of automatic weapons from Eastern Europe in quantities exceeding SOC's requirements and that it would deliver new weapons and ammunition. Based on these misrepresentations, SOC alleges that it was fraudulently induced to pay $1,067,203.00 in pre-payment to DCI.  SOC further alleges that it was forced to cancel the contract with DCI after discovering DCI's "multiple layers of deceit" and to purchase the weapons and ammunition from another source on short notice and at a significant premium.   SOC brings claims for fraudulent misrepresentation, unjust enrichment, breach of the covenant of good faith and fair dealing and breach of contract.

Discovery in this action has been problematic.  SOC has filed multiple motions to compel and motions for sanctions against DCI.  In granting SOC's motion to compel on September 12, 2012, the Court noted DCI's "recalcitrant and dilatory behavior" and found that DCI "has not acted in good faith" in attempting to resolve the discovery dispute.  (Doc. 54 p. 4).  In a December 6, 2012 order, the Court found that DCI failed to obey the Court's September 12, 2012 order to provide discovery without justification and imposed intermediate Rule 37 sanctions and payment of SOC's expenses against DCI.  (Doc. 94 pp. 5-7).

Shortly after deposing Dolarian, SOC moved to amend its counterclaims on November 2, 2012

to include Dolarian as an individually named Counterclaim-Defendant and to add facts to pierce DCI's corporate veil under the alter ego doctrine.  The Court granted SOC's motion to amend over DCI's objection on December 5, 2012.  (Doc. 96).

Dolarian filed the instant motion to dismiss SOC's counterclaims against him on December 28, 2012.  SOC opposed the motion on January 11, 2013, and Dolarian filed a reply on January 15, 2013.

Having considered the parties' arguments and the relevant law, the Court issues this order.

## DISCUSSION

### Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

**A. Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.  A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).   In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

3

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).   Thus, "bare assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled to be assumed true."   *Iqbal*, 129 S. Ct. at 1951.   A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."   *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).   In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."   *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).   To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend.   *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

With these standards in mind, this Court turns to Dolarian's challenges to the allegations in SOC's amended counterclaims.

**B. Alter Ego Liability**

SOC asserts that Dolarian is the alter ego of DCI and brings this action against Dolarian in his individual capacity.   Dolarian argues that SOC does not allege sufficient facts to establish alter ego liability.

California law has long held that imposing liability for the acts and obligations of a corporation onto an individual through the alter ego doctrine requires a two-pronged analysis:

Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that

4

there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Minifie v. Rowley*, 187 Cal. 481, 487 (1921) (citations omitted); *see also*, *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (same), *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) (same), *Wood v. Elling Corp.*, 20 Cal.3d 353, n. 9 (1977) (same), *Stark v. Coker*, 20 Cal. 2d 839, 846 (1942) (same), *Watson v. Commonwealth Ins. Co. of N.Y.*, 8 Cal. 2d 61, 68 (1936) (same).

Trial courts exercise flexibility and discretion in determining whether the alter ego doctrine applies in each case. "Issues of alter ego do not lend themselves to strict rules and prima facie cases." *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d at 777. "The conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case[.]" *Stark v. Coker*, 20 Cal. 2d at 846. "Only general rules may be laid down for guidance." *Id.* Moreover, the doctrine of alter ego is "essentially an equitable one and for that reason is particularly within the province of the trial court." *Id.*

### 1. Unity of Interest and Ownership

SOC alleges twelve items to demonstrate "a unity of interest and ownership between Ara Dolarian and DCI such that there is no individuality and/or separateness between Ara Dolarian and DCI." (Doc. 99 Amended Counterclaims ¶ 23). Dolarian argues that some of the items "are lacking in factual basis and are either redundant or legal conclusions" such that they are insufficient to establish alter ego liability. (Doc. 104 p. 6).

Courts have used a variety of factors to determine whether there is sufficient unity of interest and ownership to apply the alter ego doctrine. To determine whether an individual is the alter ego of a corporate entity, California courts have considered the following factors:

[O]ne individual's ownership of all stock in a corporation; use of the same office or business

5

location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual.

*Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1073 (2011), as modified (Aug. 9, 2011) (citing *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811–812 (2010)).  In making this determination, "[n]o single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine."  *Id*.  Moreover, "[b]ecause it is founded on equitable principles, application of the alter ego doctrine is not made to depend upon prior decisions involving factual situations which appear to be similar[.]"  *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 512 (2010) (citations omitted).  Rather, "[i]t is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case."  *Id*.

In its amended counterclaims, SOC alleges that Dolarian is the President, CEO, sole member of the board of directors, and sole shareholder of DCI.  (Doc. 99 Amended Counterclaims ¶ 23).  SOC also alleges that DCI has not had a meeting of the board of directors since 2009, does not have a corporate charter, and keeps no records of the appointments, resignations, or terminations of members of its board of directors.  *Id*.  In granting SOC's motion to amend its counterclaims, the Court considered Dolarian's deposition testimony that he recently dissolved the board of directors, which may have had its last meeting in 2009, and that he did not know what the duties and responsibilities of the board of directors were.  (Doc. 96 p. 4).  DCI's only verified asset is a $100,000.00 Mercedes Benz that Dolarian uses personally and exclusively.  *Id*.  Dolarian testified that DCI owns weapons stored in Eastern Europe with a liquidation value of $2.63 million, but no supporting documents have been produced.  *Id*.  Dolarian also testified that DCI has checking and money market accounts containing less than $500,000, but, again, supporting documents have not been produced.  *Id*.  Further, because of DCI's discovery noncompliance, the Court precluded DCI from introducing any additional evidence, testimony, or witnesses at trial or during the summary judgment stage.  (Doc. 94).  Therefore, DCI

1   cannot introduce any evidence, even if such evidence exists, to show that it holds any assets other than

2   the Mercedes Benz.

3          Accepting these allegations as true and construing the pleading in the light most favorable to

4   SOC, the foregoing gives rise to a reasonable inference that SOC's transactions with DCI were really

5   transactions with Dolarian.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

6   Further, to the extent Dolarian attacks SOC's allegations for lack of factual support or failure to cite to

7   exhibits, such shortcomings, if any, may be traceable to DCI's uncooperative conduct and lack of

8   production during discovery.  (Docs. 54, 94, 97).  Therefore, SOC has made sufficient allegations to

9   meet the first requirement of the test for application of the alter ego doctrine.

10          **2. Sanction Fraud or Promote Injustice**

11          SOC asserts that "[t]reating DCI and Ara Dolarian as separate entities would work an

12   injustice, or would result in fraud."  (Doc. 99 Amended Counterclaims ¶ 23).  Dolarian argues that

13   SOC fails to sufficiently allege the second prong of the alter ego test because SOC's allegations do not

14   "establish fraudulent behavior on the part of Dolarian" or that Dolarian's domination over DCI "was

15   used to commit a fraud or wrongdoing[.]"  (Doc. 104 pp. 6-7).

16          Under well-established California law, "[a]pplication of the alter ego doctrine does not

17   depend upon pleading or proof of fraud."  *Misik v. D'Arco*, 197 Cal. App. 4th at 1074 (quoting *Eng'g

18   Serv. Corp. v. Longridge Inv. Co*., 153 Cal. App. 2d 404, 415 (1957)).  "It is not necessary that the

19   plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result

20   in an injustice."  *Gordon v. Aztec Brewing Co*., 33 Cal. 2d 514, 523 (1949) (citing *Wenban Estate, Inc.,

21   v. Hewlett*, 193 Cal. 675, 698 (1924), *Minifie v. Rowley*, 187 Cal. at 488).  "If a corporation is

22   organized and carries on business without substantial capital in such a way that the corporation is

23   likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should

24   set up such a flimsy organization to escape personal liability."  *Eng'g Serv. Corp. v. Longridge Inv.

25   Co*., 153 Cal. App. 2d at 416 (citations omitted).  "The attempt to do corporate business without

26   providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity

27   and will be ineffectual to exempt the shareholders from corporate debts."  *Id*.

28                                                     7

As discussed above, DCI has only one verified asset, a Mercedes Benz that is used personally and exclusively by Dolarian, who is also the President, CEO, sole member of the board of directors, and sole shareholder of DCI.  (Doc. 99 Amended Counterclaims ¶ 23)  DCI has not and cannot introduce any evidence of additional assets, even if such evidence exists.  (Doc. 94).  There is no evidence that DCI ever had more assets or capital or that Dolarian ever made any attempts for DCI to obtain more assets or capital.  Rather, with one asset worth $100,000.00, Dolarian caused DCI to transact with SOC to deliver goods and services worth at least $2 million.[1]  To obtain the contract with SOC, Dolarian allegedly misrepresented to SOC that DCI was "an experienced and lawfully registered arms broker with the United States Department of State as well as with certain European countries" from whom DCI brokered purchases for weapons and ammunition "on a regular basis."  (Doc. 99 Amended Counterclaims ¶ 6).  Further, SOC alleges that DCI has failed to return any of the $1,067,203.00 pre-payment SOC paid to DCI after SOC cancelled its purchase orders with DCI.

Accepting these allegations as true and construing the pleading in the light most favorable to SOC, the foregoing gives rise to a reasonable inference that DCI is "organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts," and that Dolarian set up DCI "to do corporate business without providing any sufficient basis of financial responsibility."  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Eng'g Serv. Corp. v. Longridge Inv. Co*., 153 Cal. App. 2d at 416.  As such, recognizing DCI as a corporate entity separate from Dolarian would "sanction a fraud or promote injustice." *Minifie v. Rowley*, 187 Cal. 487.  Therefore, SOC has sufficiently alleged the second prong of the test for application of the alter ego doctrine.

Because SOC has made sufficient allegations for imposing liability for the acts and obligations of DCI onto Dolarian through the alter ego doctrine, SOC's amended counterclaims against Dolarian survive Dolarian's motion to dismiss.

---

[1] SOC alleges that it paid a 50 percent pre-payment to DCI in the amount of $1,067,203.00, making the total contract worth approximately $2.13 million.

1

**CONCLUSION AND ORDER**

2          For the reasons discussed above, this Court DENIES Counterclaim-Defendant Ara

3   Dolarian's motion to dismiss Defendant SOC, LLC's amended counterclaims against him.

4

5

6   IT IS SO ORDERED.

7       Dated:   **February 1, 2013**                        **/s/ Lawrence J. O'Neill**

8                                                 UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          9