1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLARIAN CAPITAL, INC. | CASE No. 1:11-cv-00031-MJS |
|        Plaintiff/Counterclaim-<br>       Defendant, | **ORDER DENYING<br>DEFENDANT/COUNTERCLAIM-<br>PLAINTIFF SOC LLC'S MOTION FOR<br>SUMMARY JUDGMENT** |
|   v. | |
| ARA DOLARIAN, | **(ECF No. 144)** |
|        Counterclaim-Defendant, | **CASE TO REMAIN OPEN** |
|   v. | |
| SOC LLC, | |
|        Defendant/Counterclaim-<br>       Plaintiff. | |

## I.   INTRODUCTION AND PROCEDURAL BACKGROUND

In April, 2010, Dolarian Capital, Inc. ("DCI") agreed to sell approximately one million dollars in arms and ammunition to SOC, LLC ("SOC"), for SOC's use in supplying U.S. related interests in Iraq. SOC paid DCI $1,003,087.90 for the goods and, later, $64,000 for storing them. The arms were never delivered. The parties dispute the cause of and responsibility for the non-delivery.

1    DCI initiated this action January 5, 2011, alleging breach of contract, breach of

2    the covenant of good faith and fair dealing, fraud and an account stated against SOC.

3    (ECF No. 1.) It claimed that SOC had failed to perform the parties' agreement and in

4    fact had reneged on it after DCI secured the ordered goods and stood ready to deliver

5    them for SOC's benefit. SOC filed an answer and counterclaim for breach of contract,

6    breach of the covenant of good faith, unjust enrichment and fraud against DCI on March

7    4, 2011. (ECF No. 15.) SOC claimed that DCI had misrepresented its licensure and

8    ability to procure the arms and thus forced SOC to "cover", i.e., purchase the goods

9    elsewhere. SOC later amended its Counterclaim to name Ara Dolarian as a

10   counterclaim defendant and to add a cause of action to recover against him personally

11   on an "alter ego" theory. (ECF No. 99.) Several successively vacated trial dates and

12   significant discovery sanctions against DCI later, SOC filed this motion for summary

13   judgment on November 15, 2013. (ECF No. 144.) DCI filed opposition December 20,

14   2013. (148). SOC filed a reply January 3, 2014. (ECF No. 150.) The Court requested

15   further briefing which SOC provided on February 28, 2014 (ECF No. 154) and DCI

16   provided March 7, 2014. (ECF No. 155.) The Court, finding the motion suitable for

17   resolution on the record without oral argument, deemed it submitted.

18   **II.    LAW RE SUMMARY JUDGMENT**

19   Any party may move for summary judgment, and the Court shall grant summary

20   judgment if the movant shows that there is no genuine dispute as to any material fact

21   and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

22   Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's

23   position, whether it be that a fact is disputed or undisputed, must be supported by (1)

24   citing to particular parts of materials in the record, including but not limited to

25   depositions, documents, declarations, or discovery; or (2) showing that the materials

26   cited do not establish the presence or absence of a genuine dispute or that the

27   opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

28   56(c)(1). While the Court may consider other materials in the record not cited to by the

1  parties, it is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco</u>

2  <u>Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

3        If the moving party meets its initial responsibility, the burden then shifts to the

4  opposing party to establish that a genuine issue as to any material fact actually does

5  exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

6        In attempting to establish the existence of this factual dispute, the opposing party

7  may not rely upon the denials of its pleadings, but is required to tender evidence of

8  specific facts in the form of affidavits, and/or admissible discovery material, in support of

9  its contention that the dispute exists. Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586

10  n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a

11  fact that might affect the outcome of the suit under the governing law, <u>Thrifty Oil Co. v.</u>

12  <u>Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2002), and that the

13  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a

14  verdict for the nonmoving party. <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185

15  (9th Cir. 2006). Summary judgment must be entered, "after adequate time for discovery

16  and upon motion, against a party who fails to make a showing sufficient to establish the

17  existence of an element essential to that party's case, and on which that party will bear

18  the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

19  **III.    UNDISPUTED FACTS**

20        SOC has submitted a statement of 73 Undisputed Material Facts ("UMFs") it

21  contends are supported by evidence it produced and undisputed by any competent

22  evidence. (ECF No. 144-2.) DCI responded to each (ECF No.148-1), admitting most. In

23  a few cases (UMFs 37 and 38) DCI claimed that the evidence cited by SOC did not

24  support the statements made. In many cases, DCI denied the truthfulness of an SOC

25  statement, but did so based solely on objections to SOC's interpretation of the evidence

26  or by arguing that a different conclusion should be drawn from the fact stated. As to

27  those (UMFs 10, 11, 14, 60 through 66, 69, 70, 72, and 73), the Court finds that DCI's

28  argument or other response does not put the UMFs in dispute. As to two (UMFs 19 and

30), SOC argues that DCI's dispute is based, at least in part, on evidence previously ruled inadmissible in this case.[1] As to UMF 19, the Court agrees and that fact is thus deemed undisputed. For the reasons discussed below, UMF 30 is found to be in dispute.

Given the foregoing the Court makes the following findings with regard to the contract and fraud claims.[2] **Unless otherwise here found specifically to be in dispute, the following facts are found to be undisputed:**

SOC is a U.S. Government contractor providing national security and mission support to U.S. State and Defense Department bases and missions in various places around the world.

At all times relevant here, Ara Dolarian was the President, Chief Executive Officer ("CEO"), sole shareholder and sole Director of DCI. (UMFs 6, 7, 8, and 9.)

On or about April 2, 2010, Ara Dolarian represented to SOC that DCI was then "lawfully registered with the United States Department of State to do business as an Exporter and Broker of Articles of War". (UMF 33.) SOC maintains that that representation was false. SOC's assertion of falsity is based upon UMFs 30, 31 and 33. DCI responds that the allegation that the representation was false is not supportable. First, DCI notes that the evidence relied upon by SOC to support this UMF does not precisely say what SOC attributes to it. That evidence reflects DCI's admission that "for some period of time between January 1, 2010 and September 1, 2010, DCI was not lawfully registered" as an arms broker with the U.S. Department of State. SOC also relies on the fact that DCI's Broker registration, a prerequisite to a broker license, was not issued until June 25, 2010. DCI argues that none of this evidence reflects that DCI

---

[1] On December 6, 2012, the court entered its Order precluding DCI from "introducing any evidence, testimony or witnesses either at trial or at the summary judgment stage that [DCI] has not disclosed to [SOC] in its document productions or in its Rule 26 disclosures. This preclusion includes testimony regarding those events referenced or otherwise identified in the undisclosed documents." (ECF No. 94.) SOC was invited (ECF No. 153) to advise the Court if it felt any such prohibited material was offered in opposition to its motion for summary judgment. It did. (ECF No. 154.) DCI was invited to respond. It did. (ECF No. 155.) The Court has considered these responses.
[2] Discussion of facts relating to SOC's alter ego claims is deferred.

1  was unregistered or unlicensed on April 2, 2010. It argues that the pre-June 25, 2010,

2  period of admitted non-registration could have been for a period of only a few days

3  during a much earlier period not in issue in this dispute. It also argues that the June

4  25th registration may have been a mere renewal.

5         Though the Court is skeptical of DCI's claims in this regard, the logic of them is

6  inescapable: The evidence submitted does not establish that DCI was unregistered to

7  conduct business as an arms exporter and broker on April 2, 2010 or thereafter and

8  prior to June 25, 2010. SOC's purported fact rests on poorly postured evidence and the

9  need to draw an inference therefrom. Though the inference is reasonable under the

10  circumstances and, given the evidentiary sanctions in this case, unlikely to be refuted,

11  SOC as the party moving for summary judgment must carry the burden of presenting

12  evidence, not simply create an inference. See E.E.O.C. v. Boeing Co., 577 F.3d 1044,

13  1050 (9th Cir. 2009) (inferences must arise from direct evidence and be "specific and

14  substantial" and not speculative). Thus, there remains a dispute as to whether DCI was

15  registered to conduct business as an arms exporter and broker at relevant times and

16  thus as to whether its representation that it held such status on April 2, 2010, was true

17  or false.

18         On April 28, 2010, SOC requested price quotes from DCI and followed on May

19  11, 2010, with a purchase Order, number 2761, for $1,063,329.75 in weapons and am-

20  munition. (UMFs 34-36.) The Purchase Order on SOC's form shows the "Ship to"

21  location as Kabul, Afghanistan, the "Due Date" as "5/25/2010", and the "Terms" "50%

22  down . . ." (UMFs 35-36.) SOC asserts that the Purchase Order establishes that it

23  "required" a down payment of 50% and "required delivery by May 25, 2010." (UMFs 37-

24  38.) DCI disputes that the document says that. The Court agrees; the document does

25  not establish that either were "requirements" or even essential terms of the transaction

26  agreed to by DCI. However, insofar as no one disputes that the 50% was paid, that fact

27  is not material to the resolution of this motion. SOC paid DCI $531,664.90 on Purchase

28  Order 2761 on May 13, 2010. (UMFs 40-41.) However, there is a dispute as to whether

1  the parties' agreement created a deadline for delivery. (UMFs 37-41.) That is a material

2  issue.

3      Thereafter, Purchase Order 2761 was superseded by Purchase Orders 1509-

4  1514 which effected a change in the order, the Due Date was changed July 16, 2010,

5  and the purchase price was changed to $942,485.65, but otherwise reflected the same

6  terms and created the same disputes. (UMFs 42-46.)

7      DCI responded to these Purchase Orders with invoices to which were attached

8  "DCI TERMS AND CONDITIONS". (UMFs 39, 40, 41, 48 and 49; DCI document

9  numbers 10992-11001 attached to Dolarian Declaration in Opposition to SOC Motion

10  for Summary Judgment, ECF No. 149.)[3] Those terms include the following:

11

12      3) Import/Exporter License.  SELLER will apply for the Export License(s)
       after BUYER has provided all documents listed in Attachment "B" within
13      fifteen (15) days of receiving documents. . .
       4)  Liquidated Damages:  If BUYER cancels sale, SELLERS liquidated
14      damages is the acceleration and immediate payment of the "Balance
       Due".
15      5)  Estimated Delivery Date. EDD is subject to Export Licensing and other
       Licensing requirements to be in compliance with ITAR [International Traffic
16      in Arms Regulations, 22 CFR 120130] and other Governing Regulations.
       12) These Terms and Conditions, together with "the other [unidentified]
17      documents constituting the Agreement as accepted in writing by [DCI],
       shall constitute the entire agreement . . . [and shall not be modified] unless
18      made in writing signed by an officer of [DCI].

19

20      These terms and conditions suggest a clear dispute between the parties as to the

21  nature and terms of the agreement between them if, indeed, an agreement was

22  reached.

23      Ultimately, SOC paid DCI another $471,423 pursuant to the superseding

24  invoices. (UMF 56.) It also paid an additional $64,000 invoice for "storage fees" on July

25  20, 2010. (UMFs 57-58.) Thus the total paid by SOC to DCI pursuant to their

26

27  _____
   [3] SOC was invited to advise the Court if it felt that evidence submitted in opposition to its Motion for
   Summary Judgment was precluded by virtue of the above-referenced discovery sanctions. (EC No. 153.)
28  It did so, but did not specify the Terms and Conditions documents as falling within that category. (ECF
   No. 154.)

1   transactions was $1,067,087.90.

2        DCI admits that SOC advised that "time was of the essence." (UMF 47.)

3        In addition to having to be registered as an Arms Broker, DCI had to obtain the

4   U.S. State Department's DDTC "Prior Approval" of specific transactions to deliver

5   weapons to Afghanistan. (UMFs 62-63.) DCI knew it took 60 to 180 days to obtain that

6   Prior Approval. (UMF 68.) On June 18, 2010, SOC gave DCI the documents DCI

7   needed to obtain Prior Approval. (UMF 69.) DCI did not seek this Prior Approval until

8   July 2, 2010, and then it did so for only 40% of the goods SOC had ordered; it did not

9   do so for the 60% balance. (UMFs 62-65.) Prior Approval of the 40% was given August

10  26, 2010, and DCI received written notice thereof on September 2, 2010. (UMFs 66-67.)

11       DCI never delivered any weapons or ammunition pursuant to the parties'

12  dealings. (UMF 59.) By letter dated September 1, 2010, SOC advised that it was

13  terminating its contract with DCI because DCI had failed to perform and because DCI

14  provided no assurance it was lawfully able to perform. (UMFs 60-61.)

15       SOC seeks refund of the $1,067,087.90 it paid. It seeks to recover that from DCI

16  on several alternate theories before this Court on this motion for summary judgment.

17  **IV.    ANALYSIS**

18       **A.    Fraudulent Misrepresentation**

19       This claim requires a misrepresentation, known to be false and intended to

20  deceive, which induces justifiable reliance and damage. Glen Holly Entertainment, Inc.,

21  v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir. 2003); see also 5 B. E. Witkin, Summary

22  of California law, Torts § 772 (10th ed. 2005), citing Cal. Civ. Code § 1709; Seeger v.

23  Odell 18 C.2d 409, 414, (1941); Rest.2d, Torts, § 525.

24       The heart of SOC's summary judgment motion rests on its claim that DCI's

25  representation that it was legally authorized to transact arms business with SOC was

26  false. SOC argues that DCI's representation of registration to conduct business as an

27  arms exports and broker was knowingly false, was made with the intent to induce SOC

28  to contract with DCI, and was reasonably relied upon by SOC when SOC entered into

1   the transaction with DCI and paid the above-referenced funds to DCI. That, according to

2   SOC, is common law fraud entitling SOC to recover damages suffered as a result,

3   namely the $1,067,087.90 SOC paid in reliance on the fraud and for which it received

4   nothing in return.

5       The problem with this claim is that it rests on a proposition which, as noted, is not

6   established by the evidence. The Court cannot find as a matter of law on the basis of

7   the flawed evidence presented that DCI was not authorized to transact the business at

8   hand at the time it represented it was authorized to do so and at the times it did contract

9   to do so. The inference it was not so authorized may be sufficient to persuade the trier

10   of fact at trial and it appears the evidence sanction precludes any rebuttal, but the

11   dispute as to that fact precludes summary judgment. Since the first step on SOC's path

12   to summary judgment on the misrepresentation theory requires a finding that DCI was

13   not authorized to transact international arms business, and that finding cannot be made

14   here, summary judgment on this theory must be denied.

15           1.   Unjust Enrichment

16       Unjust enrichment, simple restitution, see Dinosaur Development, Inc. v. White

17   (1989) 216 Cal.App.3d 1310, 1314 (1989), is implicated where a contract is void,

18   voidable or otherwise ineffective and equity requires relief (i.e., an implied-in-law

19   contract). Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014); see

20   also Ghirardo v. Antonioli, 14 Cal.4th 39, 57 (1996). Where a party obtained a benefit

21   from the other by fraud the law will imply a contract, or rather, a quasi-contract, without

22   regard to the parties' intent in order to avoid an unjust enrichment. See Durell v. Sharp

23   Healthcare, 183 Cal.App.4th 1350, 1370 (2010).

24       SOC claims that since DCI was required by law to be, but was not, registered,

25   licensed and authorized to sell arms to SOC, the purported contract between the parties

26   to do precisely that was illegal and hence void. More specifically, it cites Bassidji v. Goe,

27   413 F.3d 928, 930 (9th Cir. 2005) (contract calling for violation of an Executive Order

28   illegal) for the proposition that any purported agreement between it and DCI entered into

8

1    at any time before DCI became registered as a Defense Department arms dealer on

2    June 25, 2010, would have been in violation of ITAR, and thus illegal. (The initial and

3    superseded Purchase Orders and DCI invoices on them all predated June 25, 2010.) It

4    argues that under California law a contract which provides for a violation of the law is

5    illegal and void in its entirety. See Duffens v. Valenti, 161 Cal App.4th 434, 451 (2008)

6    ("[c]ontracts that are contrary to express statutes or to the policy of express statutes . . .

7    are illegal contracts. Any such illegality voids the entire contract."). Allowing DCI to keep

8    moneys paid by SOC to DCI under that void contract would unjustly enrich DCI.

9          The Court recognizes that there is evidence that SOC paid DCI $1,067,087.90

10   and received nothing in exchange and that DCI may have been unjustly enriched, i.e.,

11   gained a million dollar windfall, thereby. (This based on evidentiary sanctions precluding

12   evidence that DCI suffered loss from having purchased arms to fill its contract with

13   SOC, and the Court's skeptical reading of the purported liquidated damages provision of

14   DCI's Terms and Conditions.) If that were the case, equity would want to see justice

15   done via return of the funds.

16         However, "unjust enrichment" is a remedy, not a cause of action. Melchior v. New

17   Line Productions, Inc. (2003) 106 Cal.App.4th 779, 793 (2003) It is a remedy for an

18   actionable wrong such as fraud, breach of trust, breach of contract, etc. Id. Here, the

19   undisputed facts do not establish a right to recover on an ineffective (illegal and void)

20   contract. The remedy is unavailable because summary judgment on the underlying

21   claim is unavailable.

22         **B.    Breach of Contract**

23         The essential elements of a claim of breach of contract, whether express or

24   implied, are the contract, plaintiff's performance or excuse for nonperformance,

25   defendant's breach, and the resulting damages to plaintiff. See San Mateo Union High

26   School District v. County of San Mateo, 213 Cal.App.4th 418, 439-440 (2013).

27         SOC posits that it fully performed its part of its agreement with DCI and DCI did

28   not. It is undisputed that it paid the agreed 50% of the invoice price (and an additional

9

$64,000 storage fee). (UMFs 49-56.) There is no evidentiary basis upon which DCI can dispute that SOC had proper licenses and provided DCI with the documents DCI needed from SOC to carry out DCI's end of the bargain. (UMFs 69, 70.)

However, the breach of contract claim also relies on the following assertion by SOC: "The contract required DCI to ship [the arms] by July 16, 2010." (UMFs 46-47.) The Court is unable to find that alleged fact to be undisputed.

If there was a contract between the parties, its terms seem to be hotly and validly contested. What was the contract? What were its terms? Were they reflected in SOC's Purchase Orders, DCI's Invoices and Terms and Conditions, or elsewhere? Was there a meeting of the minds that the July 16, 2010 "Due Date" was a performance deadline? There is no evidence of that. The fact that SOC made payment to DCI after this date, and did not raise any failure to meet a performance date until it cancelled the contract later on September 1, 2010, suggests there was no such deadline. If not, then when was performance due?

In short: the Court cannot find a breach of contract (and damages for that breach) where it cannot determine the terms of the contract.

The claim by SOC on implied covenant of good faith and fair dealing necessarily remains in dispute because the express terms are in dispute. See Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corporation, 221 Cal.App.4th 867, 882 (2013) (the implied covenant cannot impose duties beyond the express terms of the contract).

## C. **Reserved Issues**

SOC undertakes to show that on the undisputed facts DCI's claims for breach of contract, breach of implied covenant, misrepresentation, and account stated have no merit and so do not stand in the way of granting summary judgment to SOC. Insofar as the Court finds that SOC has not established facts sufficient to grant summary judgment on its claims, the Court need not, and will not, here address the validity of DCI's claims against SOC.

Similarly, insofar as the court cannot determine this motion for summary

judgment on the merits in favor of SOC on its claims against DCI, there is no reason to address SOC's "alter ego" claims at this juncture and the Court will not do so.

**V.** **CONCLUSIONS AND ORDER**

Defendant's claims DCI was not authorized to transact international arms business and breached contract terms and conditions remain in dispute. The balance of the parties' claims cannot be resolved on summary judgment given the factual dispute.

Accordingly, for the reasons stated, it is HEREBY ORDERED that:

1.    Defendant/Counterclaim-Plaintiff's Motion for Summary Judgment (ECF No. 144) is DENIED, and

2.    The case shall remain open.

IT IS SO ORDERED.

Dated:   April 3, 2014          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

11